UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LYNDA KLIMPEL,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 09-1968-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 4, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 23, 2009, and December 29, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on August 5, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 14, 1964. [Administrative Record ("AR") at 19, 44.] She has a ninth grade education, and past work experience as a care provider and cashier. [AR at 20, 36-38, 85-87, 94, 97, 107-14.]

Plaintiff filed her application for Supplemental Security Income payments on June 25, 2007, alleging that she has been unable to work since June 1, 2007, due to bad knees, pain, and bipolar disorder. [AR at 89-98.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 46-56, 59.] A hearing was held on May 6, 2009, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 17-43.] On July 31, 2009, the ALJ determined that plaintiff was not disabled. [AR at 6-16.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 21, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since June 25, 2007, the date of her application. [AR at 11.] At step two, the ALJ concluded that plaintiff "has the following severe impairments: bilateral knee disorder, morbid obesity, cervical spine disorder, adjustment disorder with mixed anxiety and depressed mood, and asthma." [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1]

> to lift and carry 20 pounds occasionally, and 10 pounds frequently. She is able to stand and walk 2 hours in an 8 hour work day, and sit 6 hours in an 8 hour workday. [Plaintiff] should be given the opportunity to alternate between sitting and standing positions every 60 minutes, with the change itself to last 3 minutes maximum. [Plaintiff] must never climb ramps, stairs, ladders, scaffolds, ropes, etc. She is occasionally able to perform balancing, bending, stooping, and crouching. [Plaintiff] cannot kneel, crawl, or walk on uneven terrain. [Plaintiff] is unable to move her head and neck to the extreme ranges of motion, but is frequently able to perform less than the extreme ranges of motion. She should be allowed to hold her head in a comfortable position. [Plaintiff] is unable to perform high-quota, production-rate pace work, such as rapid assembly line work. She should not perform any work involving safety operations or responsibility for the safety of others.

[AR at 13.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 14.] At step five, relying on the vocational expert's testimony and written statements [see AR at 35-42, 147, 149-53], the ALJ concluded that plaintiff is "capable of making a successful

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

1 adjustment to other work that exists in significant numbers in the national economy." [AR at 15.]
2 Accordingly, the ALJ found that plaintiff is not disabled. [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) consider if plaintiff meets or equals Listing section 1.02A; (2) consider plaintiff's testimony and credibility; (3) consider the type, dosage, effectiveness, and side effects of plaintiff's medications; and (4) develop the medical record. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.   LISTING SECTION 1.02A**

Plaintiff contends that the ALJ's RFC determination and the medical evidence pertaining to her knee impairment show that she meets Listing section 1.02A, and that the ALJ failed to adequately support his conclusion that her impairments do not meet or equal that section of the Listing. [AR at 3-8.] The Court agrees that further consideration of this issue is warranted.

To meet or equal the Listing, a claimant has the burden of establishing that she meets each characteristic of a listed impairment. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). As relevant here, Listing 1.02A pertains to the "[m]ajor dysfunction of a joint(s) ... [c]haracterized by [1.] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) [,] [2.] chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and [3.] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)[,] [w]ith ... [4.] [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [section] 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02A.

Under section 1.00B2b, the following description is provided concerning "What [the Administration] Mean[s] by Inability to Ambulate Effectively":

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, **examples of ineffective ambulation include, but are not limited to**, the inability to walk without the use of a walker, two crutches or two canes, **the inability to walk a block at a reasonable pace on rough or uneven surfaces**, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00B2b (emphasis added). The Administration has further clarified that use of an assistive device(s) limiting functioning of both of a claimant's upper extremities is sufficient, but not necessary, to establish an inability to ambulate effectively according to paragraphs 1 and 2 of section 1.00B2b. Specifically, the Administration has explained, "We do not want to say that a claimant needs two hand-held assistive devices in order to exhibit inability to ambulate effectively .... The definition requires only that the claimant not be able to ambulate effectively and that effective ambulation would not occur if the only way an individual could get around would be with an assistive device that requires use of both upper extremities." 66 Fed.Reg. 58010, at *58027 (Nov. 19, 2001). The Administration has further asserted that "[t]he criteria [under 1.00B2b] do not require an individual to use an assistive device of any kind[,]" the "explanation[s] and examples should make it clear that [the section] applies to anyone who cannot walk adequately[,]" and "we recognize that individuals with extreme inability to ambulate do not necessarily use assistive devices." Id. at *58026-27.

Here, the medical evidence indicates that plaintiff suffers from pain in both of her knees. [See AR at 154, 157, 209.] Plaintiff has undergone bilateral arthroscopic knee surgery and was reportedly told that she would be a candidate for knee replacement surgery if she were to lose 100

6

1 pounds. [AR at 154.] According to several physicians, x-ray images of plaintiff's knees show
2 arthritic changes, minimal degenerative disease, and small osteophytes. [AR at 157, 158, 209.]
3 Plaintiff described her physical limitations during the hearing as including back and knee pain, but
4 she did not state that she needs to use any assistive device to walk. [See AR at 30.] In a
5 Function Report - Adult, plaintiff stated that she gets around by walking and using public
6 transportation [AR at 115, 118], and that she has difficulty walking more than a block without
7 stopping to rest for two to three minutes. [AR at 120.] However, she did not say that she needs
8 an assistive device to walk. [Id.] Indeed, the medical evidence indicates that such a device was
9 not medically necessary. [See, e.g., AR at 157 (examining physician Dr. Jeff Altman noted that
10 an "[a]ssistive device is not medically necessary").]

11   To make a proper step-three finding, "an ALJ must evaluate the relevant evidence before
12 concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate
13 finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis
14 v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.
15 1990)). "The regulations ... require the Secretary to review the symptoms, and make specific
16 findings essential to the conclusion. ... [The ALJ's] findings should be as comprehensive and
17 analytical as feasible and, where appropriate, should include a statement of subordinate factual
18 foundations on which the ultimate factual conclusions are based, so that a reviewing court may
19 know the basis for the decision." Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990)
20 (quotations and citations omitted); see 20 C.F.R. §§ 404.1526(c), 416.926(c) ("When we
21 determine if your impairment medically equals a listing, we consider all evidence in your case
22 record about your impairment(s) and its effects on you that is relevant to this finding.").

23   In concluding that plaintiff did not meet or equal the Listing, the ALJ in the decision stated
24 that he gave "particular attention to the impairments set forth in Listings 1.00 (Musculoskeletal
25 System)" but found that plaintiff's "knee disorder does not satisfy the requirements as stated in
26 1.02 regarding major dysfunction of a joint." [AR at 11-12.] In reaching this conclusion, the ALJ
27 summarized some of the medical evidence pertaining to plaintiff's knee impairment, including Dr.
28 Altman's conclusion that an assistive device was not medically necessary. [AR at 11.] However,

he did not discuss the evidence pertaining to plaintiff's knee surgery or the objective imaging results indicating arthritic changes, degenerative disease, and osteophytes in plaintiff's knees, and he did not say how this evidence and the RFC determination finding her unable to walk on uneven terrain impacted his step-three finding. Since the ALJ did not expressly discuss all of the relevant evidence concerning plaintiff's knee impairment, or how her impairment and functional limitations compare to the requirements of Listing section 1.02A (including whether she is unable to ambulate effectively under section 100.B2b) -- and it appears that plaintiff might meet at least some of these requirements -- the Court finds remand necessary for the ALJ to properly consider whether plaintiff should be found disabled at step three of the sequential analysis. See Dobson v. Astrue, 267 Fed.Appx. 610, 612 (9th Cir. 2008) (remanding ALJ's finding that the plaintiff's knee impairment did not meet section 1.02A of the listing where the ALJ failed to analyze whether the plaintiff "could (with or without a cane) 'ambulate effectively'" according to the factors set forth in section 1.00B2b) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3); Moss v. Astrue, 555 F.3d 556, 562-63 (7th Cir. 2009) (in finding that plaintiff failed to establish an inability to ambulate effectively, the ALJ ALJ erred in failing to "adequately consider whether [the plaintiff] in fact me[t] the [L]isting based on the provided examples [under section 1.00B2] such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking"); Dunham v. Astrue, 603 F.Supp.2d 13, 18-19 (D.D.C. 2009) (ALJ's finding that the plaintiff did not meet or equal Listing section 1.02 was not based on substantial evidence where the ALJ identified only some of the relevant evidence concerning the plaintiff's ability to ambulate, and failed to consider the plaintiff's limitations under all of the section 1.00B2b ambulation factors).

**B.  ALJ'S FAILURE TO DEVELOP THE MEDICAL RECORD**

At the hearing, the ALJ noted that the administrative record only contained treatment notes from plaintiff's primary care physician, Dr. Virgilio Naco, through approximately December 2007, and that Dr. Naco retired on February 2008. [AR at 24; see AR at 185-213.] Plaintiff testified that she started seeing "Dr. Nished," an internal medicine physician who works in a different medical

office than Dr. Naco, every two months after Dr. Naco retired. [AR at 24-25.] Plaintiff also testified that in January or June 2008, she starting seeing Dr. Prado (or Dr. Padua) from "Behavioral Health" every five to six weeks for mental health treatment after Dr. Naco retired. [AR at 27-28.] The ALJ noted that the administrative record did not include any medical evidence from Behavioral Health. [AR at 27.] At the end of the hearing, plaintiff's counsel explained that he had made two requests for plaintiff's records from "Victor Valley Mental Health, San Bernardino [C]ounty." [AR at 42.] The ALJ stated in response, "I'll leave the record open seven days. If ... I leave it open any longer, then I'm going to have to review the file all over, and we'll have to have another hearing." [AR at 42.]

The administrative record before the Court does not include any treatment records from Dr. Nished or Victor Valley Mental Health. There is also no indication in the record that the ALJ attempted to obtain such records. However, in an undated Disability Report - Appeal - Form, plaintiff listed her treating sources as 1) San Bernardino Behavioral Health, where she said she started receiving treatment for bi-polar disorder in March 2008 and her next appointment was on May 6, 2008, and 2) Dr. Ezzat A. Nashed, from whom she said she started receiving treatment for her knees, back pain, and asthma in April 2008 and her next appointment was on April 22, 2008. [See AR at 141.] Plaintiff asserts that the ALJ failed to fulfill his duty to develop the medical evidence by not attempting to obtain the treatment records from these two sources before reaching a decision in this case. [JS at 22-27.] The Court agrees.

The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that

the record is inadequate"). "In cases of mental impairments," the ALJ's duty to clarify and develop the record "is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Tonapetyan, 242 F.3d at 1150 ("The ALJ's duty to develop the record fully is ... heightened where the claimant may be mentally ill and thus unable to protect her own interests."). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

Here, the ALJ recognized during the hearing that the medical record potentially did not contain 17 months of plaintiff's treatment records (i.e., from December 2007, when Dr. Naco last saw plaintiff, to May 2009, when the administrative hearing was held). The ALJ's recognition that the medical evidence was incomplete prompted his duty to contact plaintiff's current treating physicians to see if additional treatment records were available. His failure to do so was error. See Webb, 433 F.3d at 687 (the ALJ erred in failing to meet his "affirmative duty to supplement [the claimant's] medical record, to the extent it was incomplete, before rejecting" the claimant's application for benefits).

Further, it is apparent that additional treatment notes -- especially those pertaining to plaintiff's mental health treatment -- may have impacted the ALJ's credibility and disability determinations in this case. At the hearing, plaintiff testified that her psychiatric symptoms include auditory hallucinations impacting her ability to work. [AR at 30-35.] She explained that for the past six months to one year, she had been hearing voices telling her to kill herself, she told Dr. Naco about the voices, she was hearing the voices during the hearing, and her psychiatric medication did not stop the voices. [Id.] In the decision, the ALJ rejected plaintiff's credibility concerning her alleged mental impairments because, among other reasons, Dr. Naco's treatment records do not indicate that plaintiff reported experiencing auditory hallucinations.[2] [AR at 14.] Although Dr.

---

[2] The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834. The Court finds two of the ALJ's other reasons for rejecting plaintiff's credibility concerning her mental impairments -- the ALJ's conclusion that plaintiff "did not appear to be distracted by or responding to any internal stimuli" during the hearing;
(continued...)

Naco's treatment notes do not reflect that plaintiff reported auditory hallucinations, the Court observes that plaintiff also testified that she started hearing voices up to one year before the May 2009 hearing, i.e., long **after** she last saw Dr. Naco in December 2007. Further, in her Disability Report - Appeal - Form, plaintiff stated that she suffered from bi-polar disorder with the side effect of hearing voices for which she was prescribed Abilify from San Bernardino County Behavioral Health. [AR at 142.] If plaintiff's Victor Valley Mental Health, San Bernardino County treatment records reflect that she reported auditory hallucinations to her treating physicians, such evidence might impact on the ALJ's credibility determination on this point since it would help corroborate her subjective symptoms and her testimony regarding when she started experiencing (and reporting to her treating physicians) her auditory hallucinations.

Accordingly, the Court concludes that remand is warranted for further development of the medical treatment evidence generated after December 2007, and for the ALJ to reconsider plaintiff's subjective symptoms and credibility after the record has been developed.

/

/

/

---

²(...continued) and examining physician Dr. Jason Yang's conclusion that plaintiff did not appear to be responding to internal stimuli during a September 2007 Complete Psychiatric Evaluation [AR at 13-14, citing AR at 159, 161] -- neither clear nor convincing.

First, an ALJ may not properly reject a claimant's credibility on the basis that he did not observe her subjective symptoms at a hearing because "[t]he fact that a claimant does not exhibit physical manifestations of [symptoms] at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that [her] allegations ... are not credible." Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984). Accordingly, the ALJ's personal observations at the hearing do not constitute a clear and convincing reason for rejecting plaintiff's credibility in these circumstances. Second, Dr. Yang's 2007 Evaluation occurred well before plaintiff said she started hearing voices and was consistent with plaintiff's statement to Dr. Yang that she did not have any hallucinations or suicidal ideation at that time. [AR at 161.] Notably, Dr. Yang found plaintiff to be a "reliable historian." [AR at 159.] As Dr. Yang's Evaluation was not inconsistent with plaintiff's testimony concerning her auditory hallucinations, it is not clear that the ALJ did not arbitrarily reject plaintiff's credibility on this basis. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (to properly reject a plaintiff's credibility, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider if plaintiff's impairments meet section 1.02A of the Listing, further develop the medical record, and reconsider plaintiff's credibility.[3]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 27, 2010

　　　　　　　　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[3] As remand is warranted on these grounds, the Court will not address the remaining issues raised by plaintiff.